**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

IN RE:      **Shrilly Ann Ginwright**         **CASE NO. 20-10872 KHK**

                    **Debtor**           **Chapter 13**

<u>**OBJECTION TO CLAIM #12**</u>

COMES NOW Debtor, by counsel, to Object to Claim #12 filed on behalf of the Oxford Station Townhouse Association ("Oxford Station") in the above numbered case. Debtor objects to Claim #12. That claim is not supported by sufficient evidence as to its validity and claimant's standing to file  it. Claimant hasn't elected Directors at a homeowners meeting having a quorum since, at least, 2005, as required by its By-laws.

Debtor purchased a house in Oxford Station in February of 2005. Since 2007 Ms. Ginwright has complained that Oxford Station Townhouse Association was not operating in accordance with its CCR's and bylaws. She has raised the issue of the need for quorums at HOA meetings. She has attended election/annual meetings of the association the few times that she has received  notice of the meetings. She has complained orally at the few HOA meeting that have been called. She has complained in writing to the entire community. To this date her complaints and her requests for records have been ignored.

Ms. Ginwright and her tenants have been retaliated against by the HOA because of her complaints. Claim #12 is  for $6,666 and includes a charge of  $3,445 on June 11, 2019 (top of page 11 of 24 poc) for "NON JUDICIAL FORECLOSURE." Just prior to the foreclosure

auction and her filing of the instant petition, she was told by Equity Experts, an agent for the

HOA, that she would have to pay over $11,399 to prevent the foreclosure sale of her house.

1.     A homeowner association whose members haven't elected directors and officers in accordance with the association's bylaws has no one with legal authority to: increase assessments, create ancillary charges, place liens on homes, foreclose on liens and file proof of claims.

The "assessments" and associated charges in the proof of claim were levied by a Board of

Directors that had not been validly elected by the members of the association. The bylaws of

Oxford Station Townhouse Association requires that Board Directors must be elected by the

members each year for a term of one year.[1] There hasn't been a meeting of the members/

homeowners having the necessary (30%) quorum[2] since, at least, 2005. Consequently, the claims

of Oxford Station Townhouse Association, including this Claim #12, are ultra vires and without

legal effect since no legitimate Board of Directors and officers had any authority to make Claim

#12.

To be clear: We do not argue that the homeowner association is now defunct nor do we

argue that all of its transaction are void rather than being voidable. It is sufficient that we make

clear that Oxford Station can not act against the debtor to increase assessments, create ancillary

charges, places liens on her house, attempt to foreclose on her house and file a proof of claim.

---

[1] Election of Board Directors Article  V of the Association Bylaws (page 4) "Section 2. Election. At the first annual meeting the members shall elect three directors for a term of one year, and at each annual meeting thereafter the members shall elect three directors, each for a term of one year."

[2] Such annual meetings and a 30% quorum are required by Article X of the bylaws, Section 3 and 4 (page 10)

2.      The Declarations of Oxford Station Townhouse Association also limit the ability of the Board of Directors to  <u>increase</u> <u>assessments and create ancillary charges</u> on the  homeowners.

The fees assessed against the debtor are far higher than permitted under the original Declaration of Covenants. The original Declaration of Covenants, which established the association in November of 1974, stated an initial assessment charge of <u>$120</u> <u>per year</u> per lot. Under the Declaration, a properly elected Board of Directors still must have, at least, a 30% quorum of the homeowners members to raise the assessment fee. No increase of fee assessments greater than 3% can be made without a meeting of the members without having a quorum of 60% or 30%[3] (see below) for changing assessments. As said previously, there haven't been any member meetings to elect Directors or to change assessments having a sufficient quorum since, at least 2005[4]. Without a membership with a quorum, the assessment fee can not go from $120 to the present $430 a year.

---

[3] Article V Section 3 Declaration of Covenants (page 7) and Section 6 (page 8) for special quorum rules for changing assessment dues. In addition, Article XII of the Bylaws, Section 3 (page 13) requires a 2/3 vote of the members to increase assessments by more than 3%. And Section 6 of the Bylaws (pages 14 -15) requires a quorum of 60% (or sometimes 30%) at such a meeting.

[4] At a meeting in 2006 that did not have a quorum, the debtor complained about the HOA not having elections. To placate her she was appointed "President" by someone. When she continued to demand records and elections, she quickly received a letter that she was "terminated" as president. Thereafter, she wrote a letter to the entire community detailing many of her complaints.

Article 12 Section 11[5] of the Bylaws demonstrates the degree of intention that procedural cautions would prevent the Association from putting liens with unreasonable charges on the homes in the community.

> Quorum. In order to take action under Articles VIII through XIII of the Articles of Incorporation and Article XII, Sections 3 and 4 of these By-laws, there must be a duly held meeting. Written notice setting forth the purpose of the meeting shall be sent to all Members not less than twenty-five days nor more than fifty days in advance of such meeting. At such meeting, the presence of members or of proxies entitled to cast sixty per cent of all of the votes, in person or by proxy, of the Class A membership shall constitute a quorum. If the required quorum is not forthcoming at any meeting, another meeting may be called, subject to the notice requirement set forth above, and the required quorum at any such subsequent meeting shall be one-half of the required quorum at the preceding meeting.

## 3.    The underlying proof of claim is unreasonable and insufficient

Charges for such items as: post-outreach lien enforcement, escalated debtor outreach, extended outreach, debtor outreach are unreasonable as they are not supported by anything more than internal computer entries and appear to have been "gun decked."  Even if we assume that unelected individuals without lawful authority can file a proof of claim in this case and that assessment fees and ancillary charges are lawful,  claimants charge of  $3,445 on June 11, 2019 (top of page 11 of 24 poc) for "NON JUDICIAL FORECLOSURE" is particularly unreasonable and is not supported by any documentation that funds were spent. An item representing about half of the proffered claim should not simply be buried near the edge of page 11 of a voluminous printout. A modicum of respect for the Court and the debtor required some highlighted disclosure along with supporting documentation.

---

[5] Bylaws of the Association, page 16

This supposed nonprofit has become a machine for imposing charges, liens and foreclosures on homeowners. Homeowners need to be able to use their ballot to prevent unelected directors and managers from actions not supported by the community. The debtor and others have been angry over this abuse over many years. Homeowner questions about the legitimacy of the board have been snubbed. The CCR and the bylaws have been forgotten and ignored. The law has been used as a spear to harm the homeowners and take their property without Judicial review. Equity requires that claims brought by persons with "unclean hands" be denied.

WHEREFORE Debtor prays that Claim #12 be dismissed, that the claimants liens and judgments be considered void as having been obtained by persons who have no authority to represent Oxford Station Townhouse Association and that claimant be held responsible for Debtor's attorney fees and costs in this matter.

Respectfully submitted,


/s/ Barry Weintraub
Counsel for Debtor

Barry Weintraub
Attorney at Law
32 Hayes St.
Stafford, VA 22556
540-658-9980

## CERTIFICATE OF SERVICE

I hereby certify that I have this June 21, 2020  served via the CM/ECF system or sent by first class mail a true copy of the foregoing Objection to Claim and Notice of the Objection to the following parties.

/s/ Barry Weintraub

Thomas P. Gorman, Esq.
300 N. Washington St., #400
Alexandria, VA 22314
Chapter 13 Trustee

Equity Experts
2391 Pontiac Rd.
Auburn Hills, MI 48326

Oxford Station Townhouse Association
c/o Association Management
101 Sunningdale Dr
Stafford, VA 22556

John R. Griffin,
P.O. Box 1295
129 E. Davis Street, Suite 240
Culpeper, VA 22701

AFFIDAVIT

My name is Shirley Ginwright. I am the debtor in case 20-10872 KHK. I purchased a house at 1227 Thomas Jefferson Place, Fredericksburg, VA 22405 in February of 2005, as rental property.

In October 2005, I attended my first HOA Annual meeting for Oxford Station Townhouse Association. There were seven people in attendance, including myself. They held an election, even though there was no quorum.

In October 2006 there was a meeting, but no quorum. Very few people came. However, an election still took place. I was elected President. Other positions were the secretary and treasurer. In November of 2006 I went to my first meeting with the officers and those who were Board members. I requested that I be allowed to see all of the records of the HOA. I was told that the records would be obtained. I never saw them.

On February 23, 2007 I received an unsigned letter from the "Board" stating my position on the Board of Directors and as President had been terminated by a majority of the Board. There was no previous notification of a Board meeting

In March 2008, the HOA sent a message informing the homeowners there was an election and the Board of Directors had been elected for "three" years. The bylaws require an annual election and notice. I got no notice of a meeting.

September 2009 HOA meeting was cancelled. No election was held. Between 2009 and 2015, I didn't attend any meeting during this time and not sure if there were notices to elect officers or who had been elected. There was notice of a scheduled meeting in 2016. I did not attend and there was nothing sent to homeowners pertaining to election results.

A meeting was held on November 30, 2017. It was rescheduled to December 17, 2017 due to lack of quorum. The December 17, 2017 meeting, I was told by Ms. Jackson, also did not have a quorum. A meeting was held on December 11, 2018. Ms Jackson, a homeowner, informed me there was no quorum. Meeting was to be rescheduled but was not. If it was, I was not notified. A meeting was held on December 4, 2019. A notice was sent to me, that there was no quorum and it would be rescheduled. If it was, I was not notified.

I hereby declare under the penalty of perjury pursuant to 28 U.S.C. §1746 that the foregoing is true and correct, to the best of my knowledge.

6/21/20