Barry Weintraub, Esq.
32 Hayes St.
Stafford VA 22554
540-658-9980
703-963-2595
4110ffice@gmail.com

**IN THE UNITED STATES BANKRTUPCY COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

Shirley Ann Ginwright                                              20-10872 KHK
    Debtor                                                         Chapter 13

_____

Shirley Ann Ginwright                                              AP _____

    PLAINTIFF

V.

Oxford Station Townhouse Association
    Serve Registered Agent:
ASSOCIATION MANAGEMENT GROUP. LLC
101 SUNNINGDAL DR
STAFFORD, VA 22556

Carlene McWhirt
1231 Thomas Jefferson Place
Stafford, VA 22405

Nourimoghaddam Shahrouz
1117 Thomas Jefferson Place
Fredericksburg, VA 22405

Cartland Berge
1246 Thomas Jefferson Place
Stafford, VA 22405

    DEFENDANTS

Patriot Trustee Service LLC (Trustee)

1

12020 Sunrise Valley Dr. Ste 100
Reston, VA 20191
 Serve FOR NOTICE ONLY

Thomas P. Gorman, Esq.
300 N. Washington St., #400
Alexandria, VA 22314
 Chapter 13 Trustee

## PRELIMINARY STATEMENT

 Plaintiff is a homeowner whose rental home in Stafford Virginia is governed by the Declaration of Covenants, Conditions and Restrictions of Oxford Station Townhouse Association ("Association") which were created in November of 1974. The Association has attempted to collect assessments, placed liens on plaintiff's home and instituted a proceeding to foreclose on Plaintiff's home while demanding outrageous sums of money.

 The Association, however, has not held valid election of directors and officers with the required quorums since 2006. The individual defendants listed above have appointed and reappointed themselves as the officers and directors of the Association and have taken the following actions either directly or via collection agents: collected money from the homeowners in the community as assessments, fines, penalties, "collection costs", placed liens, compromised collection demands, engaged in foreclosure proceeding on their "liens", falsely representing their bona fineness before judicial tribunals all while ignoring the requirements of the Declarations and Bylaws of the Association that govern such actions.

 This case is brought because the unelected individual directors collectively placed liens on the plaintiff's home for outrageous fees and then sought the collection of such fees in an

action for foreclosure. At that point, the plaintiff sought relief and protection under Chapter 13 of Title 11.

### Jurisdiction and Venue

1. On March 20, 2020 Plaintiff, Shirley Ann Ginwright, filed a voluntary petition under chapter 13 of the Bankruptcy Code.

2. This Court has subject matter jurisdiction to consider this proceeding pursuant to 28 USC § 157. This is a core proceeding pursuant to 28 USC § 157(b)(2)(B) and § 157(b)(2)(C). Venue is proper pursuant 28 USC § 1409(a) all of the actions and omissions complained of herein took place in the county of Stafford, Virginia. Pursuant to Bankruptcy Rule 7008, the Plaintiff consents to the entry of final orders or judgments by this Court.

### PARTIES

3. Plaintiff, Shirley Ann Ginwright, is a homeowner in the Oxford Station Townhouse Association (the "Association"), a subdivision located in Stafford Virginia. As a homeowner, she is a member of the Oxford Station Townhouse Association. She filed her Chapter 13 petition to avoid a foreclosure of her home by the Association.

4. Oxford Station Townhouse Association is a homeowners association for homes on Thomas Jefferson Place in Stafford Virginia. It was initially formed by the filing of Declarations of Covenants, Conditions and Restrictions and Bylaws in November 1975. In 2006 the Association filed incorporation papers under the Virginia Nonstock Corporation Act Title 13.1 chapter 10.

5. Patriot Trustee Service LLC is the trustee for the liens "Oxford Station Townhouse Association" has placed on the plaintiff's home which became the basis for the foreclosure on the plaintiff's home. Notice of this Complaint is being provided to them.

6. Since at least May 2017 Oxford Station Townhouse Association ("Association") has been controlled and operated by the "Individual Defendants": Carlene McWhirt, Cartland Berge, and Shahrouz Nourimoghaddam.

7. Carlene McWhirt presently represents herself to be a Director and President of the Association. However, she was not elected through an election where the quorum as required by the Bylaws and Covenants of the Association was present.

8. Cartland Berge presently represents himself to be a Director and Vice President of the Association. However, he was not elected through an election where the quorum as required by the Bylaws and Covenants of the Association was present.

9. Shahrouz Nourimoghaddam presently represents himself to be a Director and Treasurer of the Association. However, he was not elected through an election where the quorum as required by the Bylaws and Covenants of the Association was present.

**FACTS**

10. Plaintiff Shirley Ann Ginwright purchased her home at 1227 Thomas Jefferson Place Fredericksburg Va 22405 on February 17, 2005 with a deed "expressly subject to the easements, covenants, restrictions, terms, provisions and conditions as more fully set forth in said 'Declaration of Covenants, Conditions and Restrictions' dated November 21st, 1974, and

4

recorded in the aforesaid Clerk's Office in Deed Book 263, Page 536" of the Oxford Station Townhouse Association.[1]

11. Since, at least, 2017 the Association was controlled by the "individual defendants": Carlene McWhirt, Shahrouz Nourimoghaddam, and Cartland Berge.

12. Since, at least, 2017, the individual defendants represented themselves as the officers and directors of the Association. However, none of them had been elected to these posts by the members of the Association in accordance with its Declarations and Bylaws. That is, they were not elected at a meeting of the members of the community having the required quorum.

13. In October 2005, Ms. Ginwright attended her first HOA Annual meeting. There were seven people in attendance, including herself. They held an election, even though there was no quorum.

14. In October 2006 there was a member meeting, but no quorum. However, an election still took place. She was elected "President." That is, she was actually appointed to be "President" by someone in attendance.

15. In November of 2006 the officers and directors had a meeting. As the new President, the plaintiff inquired about the finances and business of the HOA. It seems that one person had kept all of the records, received all the dues, paid all the bills and there were no checks and balances. The Association did not have a bank account. As President, she was

---

[1] The Declarations and Bylaws of the Association were filed in the plaintiff bankruptcy case (20-10413 KHK) as exhibits in Docket #34 for the objection to the Association claim.

5

never given access to any records to review, as requested. Plaintiff concluded, there were no records.

16.     On February 23, 2007 the debtor received an unsigned letter from the "Board" stating that her position on the Board of Directors and as President had been terminated by a majority of the Board. There was no previous notification of a Board meeting.

17.     In March 2008, the HOA sent a message informing the homeowners there was an election and the Board of Directors had been elected for "three" years. The bylaws, however, required an annual election.

18.     September 2009 HOA meeting was canceled. No election was held.

19.     At all times described in the following paragraphs, since at least 2017, the individual defendants employed agents, Equity Experts and Association Management, and attorneys to claim and collect — supposedly on behalf of the "Association" — place liens, initiate foreclosure actions, collect what they called "association dues" and collect a large variety of miscellaneous "collection charges" upon the Plaintiff and others.

20.     On October 2, 2015 the first lien was place on plaintiff's home by the individual defendants in the name of the Association. HOA liens do not require judicial review before filing. Another lien and a judgment followed.

21.     About February of 2020 a notice appeared in the Free Lance Star of a foreclosure auction of the plaintiff's home by the Association. When she made phone calls to learn about this foreclosure she was told that over $11,000 was due.

22. When the Plaintiff learned of the foreclosure notice in the paper she felt the natural terror and fear of losing her house and equity since she didn't have $11,000.

23. In addition to the mental stress that the plaintiff experienced, she has had to file bankruptcy causing her to pay attorney fees and costs.

## CAUSES OF ACTION

### Counts I For the Individual Defendants
### Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.

24. The facts alleged in paragraphs 1 to 23 are realleged as if set forth in full herein.

25. The Individual Defendants' noncompliance with the FDCPA to the plaintiff and many others in the community was persistent throughout and was of a serious nature; those actions were intentional within the meaning of 15 U.S.C. § 1692k as outlined below.

26. The Individual Defendants violated 15 U.S.C. § 1692e(10) when they asserted that the Association and their agents had legal authority to take such actions as previously described on the Plaintiff's home.

27. At all times relevant to this action, upon information and belief, the individual defendants were debt collectors within the meaning of the FDCPA, 15 U.S.C. § 1692a(6) because they use instrumentalities of interstate commerce, including the mails, phones, Internet and newspapers, in a business with the principal purpose of the collection of debts and regularly collect and attempt to collect debts supposedly owed to the Association.

28.     The FDCPA prohibits debt collectors from using any "false, deceptive or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e Debt collectors many not falsely represent "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A)

29.     The "individual defendants" violated 15 U.S.C. § 1692e by making false representations of actions being performed and approved by the Association in order to:

- Collect "debts" using a false name
- Place liens on the plaintiff's home in the name of the Association.
- Initiate a foreclosure procedure in the name of the Association.
- Filing a proof of claim having innumerable fictitious and unreasonable collection charges such as "enhanced collection" in the name of the Association.

30.     To be clear, since the Association was controlled by the individual defendants who lacked actual authority, no allegations is made that the Association violated the FDCPA since it didn't have any elected officer or directors who acted or could act.

### COUNT II  OXFORD STATION TOWNHOUSE ASSOCIATION

31.     The facts alleged in paragraphs 1 to 30 are realleged as if set forth in full herein.

32.     While the Association has had no one with legal authority to collect association dues or fees, it nevertheless has its name associated with the liens that were placed on the plaintiff's home that need to be voided.

33.     Virginia Code 55.1-1833 et. Seq. (Property Owners Association Act) permits a homeowner association to place a lien on a member's home without Court review.

8

34.   Without properly elected officers and directors, the individual defendants had no authority to place liens, clearly the statute does not permit the placing of liens by an association without officers and directors.

35.   The Property Owners Association Act only permits liens for only reasonable charges and late penalties that are in accordance with Virginia Code 55.1-1824. The liens placed on the plaintiff's home were unreasonable charges and costs. No elected directors and officers authorized placing liens on the plaintiff's house and the amounts charged for "collection" were outrageously high.

### REQUESTED RELIEF

Wherefore, the plaintiff respectfully requests that this court provide the following relief:

1.   An award of damages, jointly and severally, against the individual defendants for the plaintiff's mental stress and expenses, pursuant to FDCPA, 15 U.S.C. § 1692k(a)(1).

2.   An award of statutory damages of $1,000, jointly and severally, against the individual defendants, pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(2) for each violation of the FDCPA.

3.   An award of plaintiff's costs and reasonable attorney's fees under the FDCPA, 15 U.S.C. § 1692k(a)(3) from the individual defendants, jointly and severally.

4.   A declaratory judgment that the liens place on the plaintiff's home by the Association are void.

5.   Such other and further relief as this court deems necessary and proper.

Respectfully submitted,

SHIRLEY GINWRIGHT, Plaintiff

By  /s/ Barry Weintraub
Barry Weintraub
32 Hayes St.
Stafford, VA 22556
540-658-9980
703-963-2595
4110ffice@gmail.com
Counsel